1                    IN THE UNITED STATES DISTRICT COURT

2                       WESTERN DISTRICT OF TEXAS

3                            EL PASO DIVISION

4

5     UNITED STATES OF AMERICA              No. EP-10-CR-2842-FM

6     v.                                    El Paso, Texas

7     JOSEPH O'HARA                         May 10, 2013

8

9

10                          PLEA OF GUILTY

11              BEFORE THE HONORABLE FRANK MONTALVO

12                   UNITED STATES DISTRICT JUDGE

13

14

15    APPEARANCES:

16    For the Government:  J. Christopher Skillern
                           Donna S. Miller
17                         Assistant United States Attorney
                           700 East San Antonio, Suite 200
18                         El Paso, Texas 79901

19

20    For the Defendant:   Albert G. Weisenberger
                           Attorney at Law
21                         521 Texas Avenue
                           El Paso, Texas 79901

22

23

24        Proceedings recorded by stenotype.  Transcript produced by

25    computer-aided transcription.

1              (Interpreter Carolina Duran present for Defendant

2    Tavares-Mendez)

3              THE CLERK:  EP-13-CR-696, USA versus Tomas

4    Tavares-Mendez; and EP-10-CR-2842, USA versus Joseph O'Hara.

5              MR. ORTEGA:  Good morning, Your Honor.  Andres Ortega

6    on behalf of the government, ready on the case against

7    Mr. Tavares.

8              THE COURT:  Thank you.

9              MR. SKILLERN:  Good afternoon, Your Honor.  Chris

10   Skillern on behalf of the United States as to the Joseph O'Hara

11   case.

12             THE COURT:  Thank you.

13             MR. RODRIGUEZ:  Good afternoon, Your Honor.  Margarito

14   Rodriguez on behalf of Mr. Tavares-Mendez.  We are ready, sir.

15             THE COURT:  Thank you.

16             MR. WEISENBERGER:  Good afternoon, Your Honor.  Al

17   Weisenberger here appearing on behalf of Joseph O'Hara, ready

18   to proceed on a plea agreement.

19             THE COURT:  Thank you.

20             Adriana, place the defendants under oath, please.

21             THE CLERK:  Please raise your right hand.

22             (Defendants sworn.)

23             THE COURT:  Mr. Tavares, what is your full and correct

24   name, sir?

25             DEFENDANT TAVARES:  Tomas -- Tomas Ariel

14:04  1    Tavares-Mendez -- Daniel.

2              THE COURT:  Could you please repeat your full name

3    again?

4              DEFENDANT TAVARES:  Tomas Daniel Tavares-Mendez.

5              THE COURT:  Thank you.

6              Mr. O'Hara, what is your full and correct name, sir?

7              DEFENDANT O'HARA:  I'm sorry, I couldn't hear you,

8    Your Honor.

9              THE COURT:  What is your full and correct name?

10             DEFENDANT O'HARA:  Joseph, middle name James, O'Hara.

11             THE COURT:  Thank you.

12             Mr. Rodriguez, have you had enough time to discuss the

13   case with Mr. Tavares?

14             MR. RODRIGUEZ:  Yes, Your Honor.

15             THE COURT:  Mr. Weisenberger, have you had enough time

16   to discuss the case with Mr. O'Hara?

17             MR. WEISENBERGER:  Yes, Your Honor.

18             THE COURT:  Based upon the discussions you have had

19   with your respective clients, do you harbor any doubts about

20   your client's mental capacity to plead guilty?  Mr. Rodriguez?

21             MR. RODRIGUEZ:  No, Your Honor.

22             THE COURT:  Mr. Weisenberger?

23             MR. WEISENBERGER:  No, Your Honor.

24             THE COURT:  Do you believe your client to have both a

25   factual as well as a rational understanding of the proceedings

14:05  1    pending and sufficient ability to discuss the case with you

2    with a reasonable degree of rational understanding?
     Mr. Rodriguez?

3

4              MR. RODRIGUEZ:  Yes, Your Honor.

5              THE COURT:  Mr. Weisenberger?

6              MR. WEISENBERGER:  Yes, Your Honor.

7              THE COURT:  Mr. Ortega, are there any suggestions

8    otherwise in the government's file in Mr. Tavares' case?

9              MR. ORTEGA:  No, Your Honor.

10             THE COURT:  Mr. Skillern, are there any suggestions

11   otherwise in the government's file in Mr. O'Hara's case?

12             MR. SKILLERN:  No, Your Honor.

13             THE COURT:  Thank you.

14             Are you suffering from any kind of illness or

15   condition that as you stand here this afternoon is affecting

16   you to such an extent that you cannot concentrate and pay

17   attention to what we are doing here today?  Mr. Tavares?

18             DEFENDANT TAVARES:  No, sir.

19             THE COURT:  How about you, Mr. O'Hara?

20             DEFENDANT O'HARA:  No, sir.

21             THE COURT:  Are you having any kind of mental or

22   emotional difficulties, such as anxiety, depression, or

23   anything like that that is affecting your ability to

24   concentrate and understand what we are doing here today?

25             Mr. Tavares?

14:06   1                DEFENDANT TAVARES:  No, sir.

2                THE COURT:  Mr. O'Hara?

3                DEFENDANT O'HARA:  No, sir.

4                THE COURT:  I'm asking you those questions because

5       over the next 20 to 30 minutes I will be saying a lot of things

6       to you and I am going to be asking you a lot of questions.  And

7       I need to make sure you understand everything that I say to you

8       and every question that I ask you.

9                If at any point in time you are confused, you don't

10      understand something I say, let me know, and I will be happy to

11      explain it or clarify it.  Or if you want to talk to your

12      lawyer before you answer one of my questions, let me know, and

13      I will let you have whatever time you need to talk to your

14      lawyer.

15               At all times, keep one thing in mind:  You are under

16      oath.  So every time you speak to me, every time you answer one

17      of my questions, you need to speak truthfully.

18               Do you understand that, Mr. Tavares?

19               DEFENDANT TAVARES:  Yes, sir.

20               THE COURT:  Mr. O'Hara?

21               DEFENDANT O'HARA:  I do.

22               THE COURT:  I am going to ask the government lawyer in

23      your respective cases to go over the allegations the government

24      is making against you and to go over the range of penalties you

25      face by pleading guilty to those allegations.  When the

14:07  1    government lawyers go over the penalties, they will refer to

2    something called a term of supervised release.  What that deals

3    with is a period of time following a sentence of incarceration.

4    And during that time, you have to comply with certain rules and

5    conditions.  Your failure to do that will in all likelihood put

6    you back in prison.

7         In your case, Mr. Tavares, you are going to be

8    deported after you serve your time in custody.  So if there is

9    a term of supervised release imposed in your case, it will be a

10   term of nonreporting supervised release.

11        What that means to you is this:  If you are caught

12   trying to enter the United States illegally during your term of

13   nonreporting supervised release or if you are found illegally

14   inside the United States during that same time period, you are

15   going to face a higher penalty than you would face if you were

16   to do either one of those two things at any other point in

17   time.

18        So let me ask you, Mr. Tavares, do you understand what

19   being subject to a term of nonreporting supervised release

20   means?

21        DEFENDANT TAVARES:  Yes, sir.

22        THE COURT:  Mr. O'Hara, do you understand what being

23   subject to a term of reporting supervised release means?

24        DEFENDANT O'HARA:  Yes, sir.

25        THE COURT:  Mr. Ortega, you may proceed.

14:08   1            MR. ORTEGA:  Thank you, Your Honor.

2            Mr. Tavares, you have been charged by the grand jury

3       in the Western District of Texas in a one-count indictment.

4       You have agreed to plead guilty to that indictment.

5            The indictment charges you as follows:  That on or

6       about March 14, 2013, in the Western District of Texas, you,

7       Tomas Tavares-Mendez, an alien who had been previously

8       excluded, deported, or removed from the United States on or

9       about August 7, 2012, attempted to enter, entered or was found

10      -- and was found in the United States without having previously

11      received express consent to re-apply for admission from the

12      United States Attorney General and the Secretary of Homeland

13      Security, the successor pursuant to Title 6, United States

14      Code, Section 202(3), 202(4), and 557, in violation of Title 8,

15      United States Code, Section 1326.

16           Mr. Tavares, do you understand what you are being

17      charged with?

18           DEFENDANT TAVARES:  Yes.

19           MR. ORTEGA:  Do you also understand what you are

20      pleading guilty to?

21           DEFENDANT TAVARES:  Yes.

22           MR. ORTEGA:  The maximum punishment for this offense

23      is a term of imprisonment of not more than two years, a fine of

24      up to $250,000, and a $100 special assessment.

25           However, pursuant to Title 8, United States Code,

14:10   1   Section 1326(b)(2), the government has filed a notice of intent

2   to seek increased statutory penalty, which means the maximum

3   punishment that you could receive is a term of imprisonment of

4   not more than 20 years.  There is no mandatory minimum sentence

5   in this case.  Punishment for this offense also carries a term

6   of supervised release of not more than three years.

7          Mr. Tavares, do you understand the maximum penalty --

8   the maximum punishment in your case?

9          DEFENDANT TAVARES:  Yes.

10          THE COURT:  Mr. Skillern.

11          MR. SKILLERN:  Thank you, Your Honor.

12          Mr. O'Hara, you have been charged by the grand jury in

13   the Western District of Texas in a three-count indictment.

14   However, you have agreed to plead guilty to count one of the

15   indictment pursuant to a plea agreement.

16          Count one of the indictment against you charges that

17   beginning on or about February 1, 2003, and continuing through

18   and including on or about October 29, 2007, in the Western

19   District of Texas and elsewhere, Defendants Tomas Gabaldon and

20   Joseph O'Hara conspired and agreed together with GL, SMM and

21   others known, but not charged herein, and others unknown, to

22   commit offenses against the United States, that is, to

23   knowingly devise a scheme and artifice to defraud the El Paso

24   Independent School District and citizens of El Paso, Texas

25   living and voting in the EPISD of the right to honest services

14:11   1    of Defendant Tomas Gabaldon, a public servant, and SMM, an

2    elected EPISD trustee, in the affairs of EPISD; and conspired

3    to knowingly devise a scheme to obtain money and property by

4    means of material false and fraudulent pretenses,

5    representations and promises.  That is, the defendant, Joseph

6    O'Hara, and GL agreed to pay cash money, campaign

7    contributions, and other bribes and kickbacks to Defendant

8    Tomas Gabaldon, an EPISD administrator, and SMM, a trustee of

9    EPISD, and said defendant, Tomas Gabaldon, a public servant,

10   and SMM agreed to receive cash money, campaign contributions,

11   and other bribes and kickbacks in exchange for Defendant Tomas

12   Gabaldon's and SMM's support and vote in their official

13   capacity with EPISD, in violation of their fiduciary duties as

14   an EPISD administrator and elected trustee, for agreements and

15   contracts between EPISD and Vendor 1, a vendor seeking business

16   with the EPISD.  And in furtherance of the scheme to deprive

17   the EPISD and the citizens of El Paso, Texas living and voting

18   in the EPISD of the honest services of the defendant, Tomas

19   Gabaldon, and SMM, and to obtain money and property by material

20   false and fraudulent pretenses, representations, and promises,

21   the defendants and their co-conspirators sent and caused to be

22   sent and delivered, by United States Postal Service, checks,

23   proposals and other correspondence, all in violation of Title

24   18, United States Code, Sections 1349, 1346, and 1341.

25           Mr. O'Hara, the maximum punishment that you could

14:13  1   receive on count one of the indictment is a term of

2   imprisonment of up to 20 years, a fine of up to $250,000, and a

3   $100 special assessment.  Punishment for this offense also

4   requires a term of supervised release of not more than three

5   years.  Do you understand the maximum punishment in this case?

6              DEFENDANT O'HARA:  Yes, I do.

7              THE COURT:  Do you understand the allegations the

8   government is making against you, Mr. O'Hara?

9              DEFENDANT O'HARA:  Are you addressing me, Your Honor?

10             THE COURT:  Yes.  Do you understand the allegations

11  the government is making against you?

12             DEFENDANT O'HARA:  Yes.

13             THE COURT:  In other words, do you understand the

14  allegations that you are pleading guilty to today?

15             DEFENDANT O'HARA:  Yes.

16             THE COURT:  Okay.  Mr. Tavares, are you here today to

17  plead guilty voluntarily?

18             DEFENDANT TAVARES:  Yes, sir.

19             THE COURT:  How about you, Mr. O'Hara?

20             DEFENDANT O'HARA:  Yes, sir.

21             THE COURT:  Did anyone force you, threaten you, or

22  coerce you in any way into pleading guilty today?  Mr. Tavares?

23             DEFENDANT TAVARES:  No, sir.

24             THE COURT:  Mr. O'Hara?

25             DEFENDANT O'HARA:  No, sir.

14:14  1          THE COURT:  Did anyone make any promises or offer you

       2    any secret deals to induce you to plead guilty in your case?

       3    Mr. Tavares?

       4          DEFENDANT TAVARES:  No, sir.

       5          THE COURT:  Mr. O'Hara?

       6          DEFENDANT O'HARA:  No, sir.

       7          THE COURT:  Have you had enough time to talk to your

       8    lawyer about your case?  Mr. Tavares?

       9          DEFENDANT TAVARES:  Yes, sir.

      10          THE COURT:  How about you, Mr. O'Hara?

      11          DEFENDANT O'HARA:  Yes, sir.

      12          THE COURT:  Mr. O'Hara, have you also had enough time

      13    to talk to your lawyer about the plea agreement in your case?

      14          DEFENDANT O'HARA:  Yes, sir.

      15          THE COURT:  Did you make sure you understood the terms

      16    and conditions of the plea agreement before you signed it?

      17          DEFENDANT O'HARA:  Yes, sir.

      18          THE COURT:  Was anything offered to you to induce you

      19    to plead guilty in your case that wasn't part of the plea

      20    agreement document that you signed in your case?

      21          DEFENDANT O'HARA:  No, sir.

      22          THE COURT:  Mr. Tavares, did anyone make any promises

      23    or offer you any secret deals to induce you to plead guilty in

      24    your case?

      25          DEFENDANT TAVARES:  No, sir.

14:15   1              THE COURT:  Are you satisfied with the work that your
        2      lawyer has done for you in your case?  Mr. Tavares?
        3              DEFENDANT TAVARES:  Yes, sir.
        4              THE COURT:  How about you, Mr. O'Hara?
        5              DEFENDANT O'HARA:  Yes, sir.
        6              THE COURT:  Do you understand that you are entitled to
        7      have a lawyer represent you at every step of the proceedings in
        8      your case, and if for some reason your lawyer cannot continue
        9      to represent you, I will appoint another lawyer to continue
       10      representing you at no cost to you?
       11              Do you understand that, Mr. Tavares?
       12              DEFENDANT TAVARES:  Yes, sir.
       13              THE COURT:  Do you understand, Mr. O'Hara?
       14              DEFENDANT O'HARA:  Yes, sir.
       15              THE COURT:  Do you understand that under the law you
       16      are presumed to be innocent and it is the government's
       17      responsibility to prove the allegations the government is
       18      making against you and the government must do that by
       19      presenting proof beyond a reasonable doubt of the allegations
       20      the government is making in your case?
       21              Do you understand that, Mr. Tavares?
       22              DEFENDANT TAVARES:  Yes, sir.
       23              THE COURT:  Do you understand that, Mr. O'Hara?
       24              DEFENDANT O'HARA:  Yes, sir.
       25              THE COURT:  Do you understand that by pleading guilty

14:16  1    today, you are giving up the right you have to have a trial in

2    front of a jury?  By giving up that right, you are giving up

3    the right you have to have your lawyer question the witnesses

4    the government has against you.  You are giving up the right

5    you have to have your lawyer challenge the evidence the

6    government has against you.  You are also giving up the right

7    you have to bring witnesses to court to testify on your behalf.

8    And you are giving up the right you have to present any defense

9    that you may have against the allegations the government is

10   making against you.  You are giving up all of those rights

11   because you are pleading guilty today.

12            Is that clear to you, Mr. Tavares?

13            DEFENDANT TAVARES:  Yes, sir.

14            THE COURT:  Is that clear to you, Mr. O'Hara?

15            DEFENDANT O'HARA:  Yes, sir.

16            THE COURT:  Do you also understand that, by pleading

17   guilty today, you are giving up the right you have to remain

18   silent?  And the reason why you are giving up that right you

19   have to remain silent is because you have to admit to the

20   allegations the government is making against you and you have

21   to admit to the facts that support those allegations.

22            Do you understand that, Mr. Tavares?

23            DEFENDANT TAVARES:  Yes, sir.

24            THE COURT:  Do you understand that, Mr. O'Hara?

25            DEFENDANT O'HARA:  Yes, sir.

14:17  1          THE COURT:  Mr. O'Hara, you also need to understand

       2    that, because you are pleading guilty pursuant to a plea

       3    agreement with the government, you are giving up the right you

       4    have to appeal your case.  Save and except for two situations,

       5    you cannot appeal your case.  You can appeal your case if it

       6    comes up that the government engaged in illegal conduct in

       7    bringing the case against you.  And you can also appeal your

       8    case if you receive ineffective assistance from your lawyer.

       9    Other than those two situations, you cannot appeal your case by

      10    virtue of the fact that you are pleading guilty pursuant to a

      11    plea agreement.  Is that clear to you, sir?

      12          DEFENDANT O'HARA:  Yes, sir.

      13          THE COURT:  Both of you need to understand that the

      14    decision about your sentence is going to be made by me.  The

      15    starting point for the decision-making process is the

      16    following:  There is going to be a presentence report prepared

      17    in each of your cases.  That presentence report is going to

      18    describe for me your offense conduct.  It is going to tell me

      19    about any other criminal record you may have.  It will describe

      20    for me the applicable sentencing guidelines.  It will tell me

      21    about your family background, your health, education,

      22    employment experience, and any financial resources that you may

      23    have.

      24          In addition to that document -- before I forget, you

      25    will have a chance to go over that document with your lawyer.

14:19  1    And if there is anything about that document that is incorrect

2    or incomplete, your lawyer will be able to take it up with me

3    before you are sentenced.

4            In addition to that document, in your case,

5    Mr. O'Hara, I will look to the terms and conditions of your

6    plea agreement to the extent that they impact your sentence.

7    And I will tell you right now that unless you breach the terms

8    and conditions of your plea agreement, I will honor the plea

9    agreement sentencing commitment there.

10            I will hear from the lawyers, and I will make a

11   decision about the supervised release at the time of your

12   sentencing.  And I will determine at the time of your

13   sentencing the amount of restitution because those two were

14   left to be decided by me.  But insofar as the actual time in

15   custody, I will intend to abide by the terms of the plea

16   agreement unless you breach the plea agreement.

17            Do you understand that, Mr. O'Hara?

18            DEFENDANT O'HARA:  Yes, sir.

19            THE COURT:  Okay.  So back to you, Mr. Tavares.  In

20   addition to the presentence report, I will consider any

21   information about you that either the government lawyer or your

22   lawyer brings to my attention.

23            Do you understand that, Mr. Tavares?

24            DEFENDANT TAVARES:  Yes, sir.

25            THE COURT:  In both of your cases, I will consider

14:21   1    what the lawyers have to say during your sentence.  I will

2    consider what you personally have to say on your own behalf.

3    All of that before I make a decision about your final sentence.

4    I'm explaining it to you so you have one thing very clear in

5    your mind:  You do not have a right to withdraw your plea of

6    guilty because you are unhappy with the sentence you receive in

7    your case.

8             Do you understand that, Mr. Tavares?

9             DEFENDANT TAVARES:  Yes.

10             THE COURT:  Do you understand that, Mr. O'Hara?

11             DEFENDANT O'HARA:  Yes, sir.

12             THE COURT:  I have gone over the rights that you have

13    that you are giving up by pleading guilty, I know you are here

14    voluntarily to plead guilty today, and I know you understand

15    the allegations the government is making against you, and of

16    course, the penalties you face by pleading guilty to those

17    allegations.

18             So with that in mind, this is what I need to know:  Do

19    you still want to plead guilty in your case, yes or no?

20    Mr. Tavares?

21             DEFENDANT TAVARES:  Yes, sir.

22             THE COURT:  Mr. O'Hara?

23             DEFENDANT O'HARA:  Yes, sir.

24             THE COURT:  Mr. Ortega, let me hear the factual basis

25    of the allegations against Mr. Tavares.

14:22  1               MR. ORTEGA:  Yes, sir.  The facts would show that on

     2    March 14, 2013, the defendant, Tomas Tavares-Mendez, was found

     3    by United States Border Patrol Agent Raymond Bencomo in the

     4    Western District of Texas approximately .1 mile north of the

     5    Paso Del Norte Port of Entry in El Paso, Texas.

     6               It was determined through official records of the

     7    Department of Homeland Security and an interview with the

     8    defendant that he was an alien to the United States and a

     9    citizen and native of Mexico.  Immigration records reflect that

    10    defendant was removed through Brownsville, Texas, on August 7,

    11    2012.  Those same records reflect the defendant had not

    12    received the consent of the Attorney General or the Secretary

    13    of Homeland Security to re-apply for admission into the

    14    United States.

    15               THE COURT:  Mr. Tavares, are those facts true?

    16               DEFENDANT TAVARES:  Yes, sir.

    17               THE COURT:  Mr. Tavares, to the indictment in your

    18    case, how do you plead, guilty or not guilty?

    19               DEFENDANT TAVARES:  Guilty.

    20               THE COURT:  Mr. Skillern, let me hear the factual

    21    basis of the allegations --

    22               MR. SKILLERN:  Thank you, Your Honor.  I will read a

    23    summarized version of the factual basis --

    24               THE COURT:  That will be fine.

    25               MR. SKILLERN:  -- that is attached to the plea

14:23  1    agreement.

2              In 1994, Gary William Lange created Mecca Tech,

3        Incorporated, MTI, a billing company for school districts.

4        Lange hired Tomas Gabaldon to serve as MTI's New Mexico state

5        director.   Thereafter, Gabaldon became a contract employee for

6        MTI.   In 2002, Lange and Co-defendant Joseph O'Hara agreed to

7        partner their respective companies, or discussed doing so, MTI

8        and Strategic Government Systems, Incorporated (SGS), which was

9        owned by O'Hara, and it was in the business of governmental

10       contracts and services.

11             Beginning in November 2002, Gabaldon provided

12       consulting services to the El Paso Independent School District

13       on a contract basis.   On or about April 23 in 2003, Gabaldon

14       became employed by EPISD as an associate superintendent for

15       special education.   Gabaldon continued to receive monthly

16       payroll checks from MTI.   Beginning in early 2003, the EPISD

17       issued a request for a proposal, an RFP, regarding Medicaid

18       Administrative Claims coupled with School Health and Related

19       Services billing.   The RFP also requested that the vendor have

20       an operating software designed for special education students'

21       Individual Education Plans.

22             Gabaldon advised Lange to submit a proposal to the

23       RFP.   Lange approached O'Hara requesting that SGS provide the

24       IEP software and suggesting that MTI would perform the billing.

25       O'Hara agreed to bid on the RFP together with Lange under the

14:24  1    name of SGS.  Gabaldon and Lange agreed that if SGS/MTI was
       2    awarded the contract with the EPISD, Lange would pay Gabaldon
       3    $50,000.
       4            In April of 2003, EPISD received various proposals in
       5    response to the RFP.  To evaluate the proposals, Gabaldon
       6    assembled a bid review committee.  The committee ranked one of
       7    the bidders, 4GL, as its first choice to receive the contract,
       8    and SGS as its second choice.  On or about July 8 of 2003,
       9    Gabaldon executed an Executive Summary of Board Agenda Item,
      10    which was subsequently presented to the EPISD board of
      11    directors whose approval was required for the award of the
      12    contract.  In the summary, Gabaldon represented that SGS was
      13    the choice of the review committee and Gabaldon recommended the
      14    award of the contract to SGS.  At the July 15, 2003 EPISD board
      15    meeting, the contract was awarded to SGS.
      16            Following award of -- the award of contract, Gabaldon
      17    approached Lange regarding the monies Gabaldon claimed that he
      18    was owed.  Gabaldon was adamant that the payment to him not be
      19    directly tied to SGS, as such Gabaldon was paid through a
      20    company called IC Solutions, LLC, that Lange had previously
      21    created with another MTI employee.  Lange used ICS to funnel
      22    bribe money to Gabaldon, and Gabaldon accepted the money
      23    through his company SYG.
      24            On or about -- on August 10, 2003, EPISD mailed a
      25    check to SGS for $750,000 for the IEP software through the

14:26  1    United States Postal Service.  On September 1, 2003, at
       2    O'Hara's direction, SGS wrote a check in the amount of $62,500
       3    to ICS.  On September 11, 2003, the check was paid.  On
       4    September -- on or about September 10, 2003, ICS wrote a check
       5    for $25,000 to SYG, which ICS mailed through the United States
       6    Postal Service.  Gabaldon endorsed the check and deposited it
       7    on September 24, 2003.  On November 6, 2003, at O'Hara's
       8    direction, SGS wrote another check for $62,500 to ICS, which
       9    was paid on November 10, 2003.  ICS received the check and
      10    wrote a check for $25,000 to SYG, Gabaldon's company, which was
      11    mailed through the United States Postal Service.  Gabaldon
      12    deposited the check on November 20, 2003.
      13          On January 8 -- 28 of 2004, EPISD mailed a second
      14    check for $750,000 for the software through the United States
      15    Postal Service.  On February 5, 2004, at O'Hara's direction,
      16    SGS wrote another check for $62,500 to ICS, $25,000 of which
      17    was mailed from ICS to SYG through the United States Postal
      18    Service.
      19          With regard to the SHARS/MAC billing portion of the
      20    contract, during the first several months of the contract, SGS
      21    fell short of the fees they anticipated collecting.  In April
      22    of 2004, O'Hara and Lange proposed to Gabaldon a change to
      23    SGS's contract with EPISD, later known as Amendment One.  The
      24    contract change would eventually increase the fees EPISD paid
      25    to SGS.  Lange and O'Hara discussed the potential contract

14:28   1   change, and Lange advised O'Hara he would need money from

2   O'Hara to pay people in El Paso, Texas, to get the contract

3   change approved.

4           On or about May -- May 6 of 2004, Corporate

5   Consultants, a company owned by Lange, received in its account

6   at Capitol National Bank a wire transfer of $35,000 from the

7   O'Hara Group, which was sent at O'Hara's direction.

8           On or about May 31 of 2004, Lange's corporation,

9   Corporate Consultants, sent a check to SYG and Gabaldon for

10   $12,500.  On or about June 25, 2004, Corporate Consultants sent

11   another check to Gabaldon also for $12,500.

12           On September 14 of 2004, Gabaldon and EPISD special

13   educational legal counsel presented Amendment One to the SGS

14   contract to the school board and recommended its approval.  The

15   board approved Amendment One, and it was executed on October 1,

16   2004.

17           In January of 2005, Lange was approached by an EPISD

18   official that suggested that Lange make a payment to EPISD

19   board trustee member Salvador Mena, Jr.  On or about -- in

20   January of 2005, Mena, Lange, and others met at a restaurant in

21   El Paso, Texas.  Lange was informed that the maximum amount for

22   a campaign contribution to Mena was $5,000.  It was understood

23   by Mena that the $5,000 campaign contribution were for his

24   favorable vote for Amendment One and future support of SGS.

25   Thereafter, Lange conferred with O'Hara concerning the proposed

14:29    1    $5,000 contribution to Mena.  On February 14, 2005, at O'Hara's

         2    direction, a check for $5,000 was written to Mena -- to Mena's

         3    re-election committee from FREEPAC, a political action

         4    committee set up by O'Hara in New York State and for which

         5    O'Hara was the treasurer.  The check was sent to Lange by

         6    O'Hara through interstate commerce via Federal Express, a

         7    commercial interstate carrier.  Lange delivered the check

         8    personally to Mena in El Paso, Texas.  Thereafter, Mena

         9    assisted in getting payments sent to SGS from EPISD that had

        10    been withheld by EPISD due to problems with SGS's performance

        11    under Amendment One to the contract.

        12            Amendment One resulted in EPISD paying 2 million --

        13    just over $2 million in fees during the life of the contract

        14    with SGS for SHARS/MAC reimbursement services.  Without the

        15    execution and adoption of the Amendment One, EPISD would have

        16    paid approximately $670,000 for the same services under the

        17    initial contract.  Given Amendment One, EPISD paid 1 million --

        18    just over $1,300,000 that it would not have paid under the

        19    original contract.  With regard to the software component of

        20    the contract, the software constructed by SGS never became

        21    fully functional and never performed as promised by SGS.  EPISD

        22    paid $2,300,000 for the software.

        23            The district calculates its total loss on the contract

        24    is just over $2,800,000.

        25            THE COURT:  Mr. O'Hara, the facts the government

14:31   1   lawyer read that are attributed to your direct conduct, are

2   they true or not true?

3           DEFENDANT O'HARA:  It's correct, Your Honor.

4           THE COURT:  Are those facts true or not true?

5           DEFENDANT O'HARA:  True.

6           THE COURT:  Did you also review the totality of the

7   factual basis that is attached to your plea agreement with your

8   lawyer?

9           DEFENDANT O'HARA:  I did, Your Honor.

10          THE COURT:  And are those facts true or not true?

11          DEFENDANT O'HARA:  They are true, Your Honor.

12          THE COURT:  To count one of the indictment in your

13  case, how do you plead, guilty or not guilty?

14          DEFENDANT O'HARA:  Guilty.

15          THE COURT:  I find that both of you are pleading

16  guilty freely and voluntarily.  I find that you understand the

17  allegations the government is making against you and the

18  penalties you face by pleading guilty to those allegations.

19          I find that you understand your rights, that you

20  knowingly waive your rights, that you are competent to enter

21  your plea of guilty, and that there is a factual basis for your

22  plea of guilty, and I'm accepting both of your pleas of guilty

23  at this time.

24          Who are the probation officers assigned to prepare the

25  presentence reports in these two cases?

14:32  1          PROBATION OFFICER:  Good afternoon, Your Honor, Myrna
       2  Lozano with U.S. Probation.  For Defendant O'Hara, Martin
       3  Chavez is assigned to the case; and for Tavares-Mendez, Myrna
       4  Lozano.
       5          THE COURT:  Very well.  Adriana, let's go ahead and
       6  set these cases for sentencing, please.
       7          THE CLERK:  For Mr. Tavares, sentencing July 19 at
       8  9:00; for Mr. O'Hara, July 30 at 9:00.
       9          THE COURT:  Very well.  Mr. Weisenberger, I am going
      10  to let Mr. O'Hara stay free pending his sentencing, and I will
      11  also allow him to self-surrender on or about December 1 --
      12          MR. WEISENBERGER:  Thank you, Your Honor.
      13          THE COURT:  -- again provided that he complies with
      14  the terms of the plea agreement.
      15          And to facilitate things for him, work with Ms. Lozano
      16  and Mr. Chavez in setting the presentence report interview via
      17  teleconferencing.
      18          MR. WEISENBERGER:  They have agreed to do it
      19  immediately after this proceeding, Your Honor.
      20          THE COURT:  Okay.  So he is going to be available to
      21  do it today?  The component that is going to be missing is the
      22  financial data information.  So you need to make sure that any
      23  and all things financial -- the probation officer is entitled
      24  to know every single dollar he has to his name and every item
      25  of property -- real estate or personal property that he owns.

14:34  1  Okay.  So all of that needs to be disclosed.

2           Do you understand me, Mr. O'Hara?

3           DEFENDANT O'HARA:  Yes, sir.

4           THE COURT:  Fair enough.  Anything else, folks?

5           MR. ORTEGA:  No, Your Honor.

6           MR. SKILLERN:  No, Your Honor.

7           MR. WEISENBERGER:  Thank you, Your Honor.

8           MR. RODRIGUEZ:  No, Your Honor.

9           THE COURT:  Very well.  We are adjourned.  Thank y'all

10  very much.

11                       * * * * * *

12                     C E R T I F I C A T E

13      I certify that the foregoing is a correct transcript from

14  the record of proceedings in the above-entitled matter.  I

15  further certify that the transcript fees and format comply with

16  those prescribed by the Court and the Judicial Conference of

17  the United States.

18
    Signature: /s/Nalene Benavides       Date:  May 29, 2013
19                  Nalene Benavides, RMR, CRR

20

21

22

23

24

25